May it please the Court, Counsel. Good morning. Brian Spears for the Defendant Appellant, Mr. Ajelero. I'd like to begin this morning by discussing the 60-month sentence imposed by the District Court. And I have three points that I want to offer to the Court. But there's a common thread that runs through each of these points, and that is that the District Court did not make sufficient findings in connection with the sentence. Do you agree with that because you recognize that your other attack on the sufficiency of the evidence is weak? We can certainly discuss the sufficiency of the evidence, if Your Honor please, but I did think it was appropriate to begin with the sentencing arguments. That's fine. I'm just drawing an inference. Understood. And I will say also that in reviewing the record here, the sentencing issues are real. And the defects in the record are real. And so I do think it's important to emphasize that and address any questions the Court has. The first issue is that the District Court imposed, in essence, an unexplained upward variance. So Count 37 of the superseding indictment charged a conspiracy to commit aggravated identity theft. The District Court found, and there are, I think, questions about this too, that the guidelines were a flat 24 months for Count 37, but then departed upward from two years to five years with no explanation for that. So the Court imposed a two-fold upward variance with no explanation. And, of course, the Court's precedents are that when a District Court departs or varies from the guidelines, particularly in an upward direction but in either direction, there needs to be findings. Can I, so this is, I'm glad you're starting with this one because this is the place I was most tied in knots, and my questions are going to reveal my lack of facility with the sentencing guidelines. So that's my disclaimer. In order to figure out whether this was, in fact, an upward variance, we first need to understand what the guideline range is. And that is, I think, one of the places where we see some different approaches. Going back to square one and looking at the guideline for conspiracy. So the first thing it tells us is you use the base offense level for the corresponding substantive crime. Now, it doesn't say use the sentence for the corresponding substantive crime. It says the base offense level. We don't have a base offense level for the substantive crime here. And, in fact, we have multiple different guidelines that tell us that for the substantive aggravated identity theft charge, you don't actually ever sort of look at the charges as a whole. You impose a separate consecutive distinct sentence that's calculated independent of whatever other sentence you impose. Are you with me so far? Is what I just said right so far? Well, respectfully, Your Honor, no. Because here, and I think where Your Honor is getting at is you have this operation of 2B1.6, which applies to the substantive offense of 1028A, aggravated identity theft. That offense carries with it a mandatory consecutive two-year sentence. And so it appears that the Sentencing Commission viewed that as, when thinking about the guidelines, okay, we're going to just prescribe two years for that. But this offense, of course, is Section 371 conspiracy. So I think the district court's reliance on 2B1.6 to set the two-year guideline prescription was itself an error. Okay. So I'm with you so far that, no, just because we treat the substantive offense that way doesn't mean we treat conspiracy. So what are you supposed to then do at the very base offense level question for conspiracy when it says use the base offense level for the substantive crime, but we know there isn't a base offense level for the substantive crime? Do we substitute an analogous crime? How do you even do the calculation? I think that the guidelines permit some flexibility there. And so the approach that I submit was the right approach would be to say, okay, let's look at Count 37 and let's look at Counts 42 and 43, which are the tax offenses, and let's analyze them together. And what we would argue is that this is – In any event, do I have this wrong? The district court made a determination of what it thought was the guideline, and then without any explanation imposed a sentence hugely above the guideline. So don't we have to send it back? I mean, this is really a question for your adversary, but regardless of how the guideline should be calculated, by his own determination, he was giving an above-guideline sentence. And he can't do that without explaining why he's doing it. I completely agree, Your Honor. I do think a resentencing is necessary here. I should add, I mean, when I'm sitting as a district judge, which I do every once in a while, I always begin by saying, and I'll just note for the record, that I think the guidelines are totally irrational from top to bottom, and this discussion may further explicate why they are. But that's not the issue. The issue is he calculated the guidelines, and then he gave a sentence hugely above it and didn't explain why. Right. I think, to your point about the guidelines, I can't resist commenting on that as it relates to this case, because what we do know is that a guideline level was set here of 51 to 63 months. And what the judge did there was he analyzed it as an intended loss case, and he found an intended loss in excess of $1.5 million. The problem that I have with that is that it's 30 times the actual loss amount. So the actual loss here was in the neighborhood of $48,000, and yet the sentence imposed here assumed an intended loss of $1.5 million. And further concerning, and again, the absence of findings makes this particularly challenging, but it was clear, and I don't think there's any dispute, that my client was in Nigeria during the tax preparation season for tax year 2016, and for tax year 2016, which was included in the intended loss analysis. No, if he's guilty of conspiracy, the conspiracy continues even when he's not around, right? That's true. But for the district court to undertake a relevant conduct analysis based on the conduct of others, again, there need to be findings, and there needs to be even some reference to 1B1.3, the relevant conduct provision. And there's nothing in the pre-sentence report that talks about a relevant conduct analysis or the district court's remarks. And yet it also cuts against this very clear evidence, I don't think the government would dispute it, that my client was out of the country during the period of time when this $969,000 intended tax loss was perpetrated by his co-defendant. No, but I come back to if it's an ongoing conspiracy and he's part of it, then it doesn't matter. He can be in Mars, but he's still responsible for what the conspiracy does. But it would have to be part of a jointly undertaken activity and reasonably foreseeable to my client. What was reasonably foreseeable is they were going to cheat Uncle Sam out of tax money. Well, we dispute that. That's a separate question, but I'm saying assuming he's a member of the conspiracy, then it doesn't matter that he was no longer active in it. That's not the same as withdrawal. There's no claim here that he affirmatively withdrew from the conspiracy. Your claim at best is he wasn't shown that he was a member of the conspiracy. That's the most you could have argued in that regard. Right, and then, of course, to Your Honor's point earlier, there has to be some record where the district court undertakes a relevant conduct analysis here, and there's not even a cite to the guidelines relevant conduct provision. Can I ask another question? Let's assume it is relevant conduct and that for the purposes of the guidelines range on 42 and 43, the 51 to 63 months is right as a first cut. How does that interact with the 36-month statutory max on those charges? Do you say since there are two charges, that means the effective statutory max is 72, so the 51 to 63 is the effective guidelines range, or does the 36 months cap the actual true effective guidelines range on that charge? Your Honor, if it was a single count, then it would be capped at that 36. So the second count doubles that. Yes, Your Honor. That's right. I see that my time is up here. I did just want to note that I filed a motion for bond pending appeal as well a few weeks ago, which sort of has ripened as we got closer to this proceeding. If there are any questions about that, I'm happy to address them. Thank you, and we'll have an opportunity to hear from you in a minute again. Rebuttal? Thank you, Your Honor. Yes. And I have to apologize. You can be seated. This isn't for you, but I realized in my zeal to jump into this case, I didn't explain to you all what is apparent to me, but you may not realize, which is that we only have two judges here. Judge Radji had a family emergency and is not going to be able to make it personally for the argument. She does plan to listen to the tapes of the arguments and will participate once she's had a chance to do that in the conference. So I just wanted to explain the unexplained there. Ms. Cook. May it please the Court. Hannah Cook for the United States. Your Honors, the defendant knowingly joined the conspiracy to use stolen identities to file false tax returns. But since my adversary focused on the sentencing issue, that's where I'd like to go first.  order of how the argument proceeded with Mr. Spears, which is to say to start with tax year 2016 and why that's properly included, then move to the calculation of tax loss, and then finally to the upward variance argument, if that's all right with the Court. So first, as to the inclusion of tax year 2016, I think Judge Rakoff, you got it exactly correct. This is a conspiracy. Oh, that's a relief. This is a conspiracy. There's no argument of withdrawal. The jury found that defendant was a member of this conspiracy, and the conspiracy continued into 2017. And indeed, in addition to there having been no argument below about withdrawal, I would point out to this Court that notwithstanding whether or not the defendant was in Nigeria, when he returns and needs to file his own 2016 tax returns, he goes to Mr. Bangbala, his own tax return preparer. They use the same EFIN. They use KBAMs, and I can see that in the record at Confidential Appendix 2148. And for Mobeta, his business, same thing. He goes back in June of 2017 to Mr. Bangbala, and they together file these false returns, at least for Mobeta. I believe it's undisputed that that return was false and that it claimed the fuel credits, similar to the counts that he was convicted of under 72062, and that return is at Confidential Appendix 1881. It was certainly reasonably foreseeable that the conspirators would continue to use the same tools, and indeed tools that Mr. Agilero provided them, the EFIN, the refund advantage license, in order to continue filing false tax returns. And honestly, I... But one of the things that I'm struggling with a little bit is that the counts 42 and 43 were about filing false taxes. Count 37, which is where all the money was, wasn't directly about filing. It was a different mode of operation, right? It was really about identity theft. It was about using other people's identities to get their refunds. Is that really the same conduct as the conduct in counts 42, 43, such that it's appropriate to pour that into the calculation? Yes. And so on a factual level, I'd say, just responding to your first point, the returns they're filing using the stolen identities are false. The return, the withdrawals, the employers, the addresses, the dependents, they're all made up. And several... No, what makes it work is the identity theft. So they're inextricably intertwined. Correct. And I'd also point out that the tax guidelines are a little different than some of the other guidelines. So 2T1.1 says not only the usual relevant conduct analysis, but it specifically says that all conduct violating the tax laws is included in tax loss unless it's clearly unrelated. And here, as Judge Rakoff just said, they're clearly intertwined because MOBETA is a key part of this scheme. And defendant, obviously, is a key part of this scheme, in that they're using this business to get the EFIN that allows them to file the returns. They're using MOBETA and Mr. Aguilero's information in order to get the refund advantage software license that they renew every year in order to print the checks. Because, of course, without the refund advantage software license, the scheme doesn't work because they need to be able to print the checks on premises in order to then give them to a co-conspirator to cash. If they were using, say, bank accounts, this wouldn't have worked. It's easier to catch that. It's the printing of the checks that allows this scheme to move forward. And, indeed, so they are, indeed, I would say clearly related, but they're certainly not clearly unrelated. So that sort of covers, I would say, that point on that. Just very quickly to respond to Mr. Spears on intended loss. Again, the tax guidelines are a little bit different. 2T1.1 says that tax loss is the loss that would have happened had the offense been committed. So it explicitly, in the text of the guidelines, references intended loss. And I would point this Court to a recent Third Circuit opinion in United States v. Banks, which addresses this issue with the tax guidelines. As to intended loss, the Third Circuit concluded correctly and in accordance with this Court's precedents that intended loss is the proper measure under the tax guidelines. Can I shift you to the question I asked your colleague? Looking at count 37, and you get this conspiracy, you look at the substantive offense, what's your view as to, in the absence of a base offense level for the corresponding substantive offense, what's the next move that the sentencing judge is supposed to make? Yes, Your Honor. Although I want to flag that there are reasons why this Court doesn't need to address this issue if it doesn't want to. But to answer your actual question, what you suggested is completely correct. So there's a provision within the guidelines. It's Section 2X1.5 that says that if there is no guideline that has been promulgated, you apply the most analogous offense guideline. And here we submit that that's probably 2B1.1 because this is fundamentally what they're doing, is committing wire fraud using that's the predicate offense for the aggravated identity theft. Does it matter that he was acquitted of wire fraud? Does that make it a little bit odd to use the wire fraud as the most closely analogous offense? I don't think so. And I think the way we think about that is that the jury may not have found the defendant knew about any particular wire. He wasn't sitting at the computer with Mr. Bangbala saying, okay, yes, Mr. Colon, let's type in these numbers. Let's hit submit. Because they have to have the wire needs to be reasonably foreseeable for wire fraud. But he can know the conspiracy. And, indeed, just to very briefly touch on the, excuse me, the sufficiency, this Court said that for conspiracy, you need to know the general nature. He needs to know that they're filing false tax returns using stolen identities. And he can know that, and he can know, for example, that that's why his existing tax preparer needs him to submit all this paperwork to the IRS to get new numbers without knowing any particular wire. Let me ask you this, though, because I still sort of feel we're missing the wood for the trees here. The judge calculated the guidelines as two years for this count, right? So I want to put a slight twist on that. I want to say that I think what the judge was doing here was saying in, sorry, let me take one step further back, and I swear this is going to where your question is. As your Honor knows, when you calculate the guidelines range, the way you do that is you take the guidelines specific to each offense, you calculate at a base offense level, there may be some additional enhancements or reductions, and then you come up with, for each count, the offense level. Then once you've gotten that offense level, you move to Part 3 of the guidelines, which is grouping. Yeah, was grouping applicable here? So because, yes, but the district court applied no additional offense level because there wasn't an offense, there is a provision of the guidelines, and let me just make sure that I tell you it correctly. It is in our brief, but for, let me tell you correctly, oh, it's in one of our footnotes. Yes, I'm sorry. Section 3D1.4C, apologies about that. When there's no offense level for the count, you disregard that count in the grouping analysis. So what the district court did was it found the total offense level based on the tax guidelines, which in our view is correct and is why this court doesn't actually need to get into what the conspiracy count was because the entire offense level can be calculated based on the tax counts. But the district court says, okay, I've said that this is, I think this is 24 months, but that's not an offense level, right? That's just months. There's no offense level. It drops out. We do the tax analysis. We get to our final guidelines range, which is, excuse me, we get to our final offense level, which is 24, and then look at the tax table. And that's how that always goes, right? You can have numerable offenses that have various specific offense levels. For those offenses, you engage in your grouping rules. You get to your final offense level, and that gives you your guidelines range. And when we're talking about, oh, I'm sorry, Your Honor. When we're talking about the procedural reasonableness of the guidelines calculation, this court's precedents are clear. Those last two numbers. No, I'm still unclear. What did the judge say was the guideline range for this count? Your Honor, the judge didn't give a guideline range for this count. Okay. What did he say was the overall guideline range? 51 to 63 based on a total offense level of 24, which is correct. So the ‑‑ so I'm not even sure how you get to that, given that there's no grouping. Your Honor, I can explain how you get there. So you get there using the tax guidelines. So 72062 is obviously a tax charge. 2T4.1 says you refer back to 2T1.1. I'm sorry. I know this is a lot of code science. And then that tells you to calculate the total intended tax loss for, as I mentioned before, all conduct violating the tax laws. And so that is how you get this in ‑‑ is it all right if I continue, Your Honors? Please. That is how you get to the total tax loss on these counts, is the district court is summing up all of the intended tax loss. And there's no dispute those numbers are accurate. There was no dispute whatsoever below that the PSR's numbers were incorrect. Everyone agrees that this is what the intended loss was, and I don't understand there to be a dispute about the correctness of the numbers for intended loss. So the district court sums those up and gets to the offense level of ‑‑ it's actually 22 plus 2 for being in the business of tax preparation, so 24 as your final guidelines offense level. That's the final offense level, which is what we care about, right, is the final offense level because that's where we're going to get the guidelines arranged from the table. And so he says, okay, I've added up these numbers. This is the tax loss. Does the offense calculation. Under grouping, no addition. We don't need to add, for example, any points because of there being no offense level. That gets me to my 24, 51 to 63 months. And that's the correct analysis. That's the correct analysis under the tax guidelines, which sort of obviates this entire need to do the ‑‑ So, in other words, if I'm understanding on count 37, first of all, you're saying the proper way to do that would be to borrow using the analogous and you think wire fraud would be the most analogous. That's not what the district court did here, but it doesn't matter because the district court essentially ignored any sort of sentence for count 37 in the grouping. And you're allowed to group count 37 even though it's identity theft because it's a conspiracy rather than a substantive. And once you get to the grouping, you're essentially using the 42, 43 as the effective range for the entirety and the fact that the court then assigned those to the 37 count rather than the 42, 43 count from whence they came is permissible under the grouping. Correct. Is there an issue here of the ‑‑ of Amendment 821? No, Your Honor. Amendment 821 was promulgated and made retroactive after the sentencing in this case. Yeah, but it's retroactive. It is retroactive, but ‑‑ And if it were applied, if I understand even accepting your approach, then the guideline range would have been 41 to 51 months, so it still would have been an above guideline calculation. That's correct, Your Honor, but it's not necessarily clear, as Your Honor knows, when there are these retroactive guidelines amendments. The defendant makes a motion in the district court, which indeed the defendant did here, which the district court actually denied last month. But that motion gives the district court discretion to determine first, first the district court determines whether Amendment 821 applies at all and there are a number of exceptions to 821, but even if 821 did apply, then the district court has the discretion but not the obligation and we in our motion papers cited a number of cases from this court that say that that's an entirely discretionary decision. The court may decide after weighing the 3553A factors that a resentencing is appropriate, excuse me, that a reduced sentence is appropriate, but that's a district court balancing that hasn't happened yet. And is that, you said the district court denied, is that on appeal in a separate docket or is that still within its time to appeal? Where are we on that? There's been no appeal filed from that decision, but it's certainly not a part of the notice of appeal in this case. So to the extent defendant wants to file another motion, take another appeal. I guess my question is this. Assuming we conclude that the district court miscalculated the guidelines, I know you're arguing that they didn't, but assuming we find that, then this would have been an above-guideline sentence. And in no place did the court indicate why it was imposing a non-guideline sentence, maybe because they thought they were still within the guidelines. But don't we have to send it back if it was a non-guideline sentence to get an explanation? So I want to address two points. The first is that in the circumstance Your Honor described, this court still doesn't need to say anything about 821 because either it's going back for a re-sentencing, there can be re-briefing, there will be other issues, and the district court can consider it, but this court doesn't need to say anything about that because that will get briefed below. Or the district court analyzes it. I'm not talking only about 821, but go ahead. To your second point, I think there is a little bit of a disconnect here. In terms of what it means to receive an above-guideline sentence. And this Court of the Supreme Court, I'm looking at cases like Gall, has said when we think about what's above guidelines, we're talking about what's above that final guidelines range that's in the table at the end. That's the question. In the judgment, there's a box for the judges to mark as to whether it's within the guidelines or not within the guidelines. Which box did this judge check? This judge understood it to be within the guidelines. Okay. So if he's wrong on the guidelines, then he didn't offer any reason because if he had checked the other box, then he would have given a reason, at least in the judgment, which is required. Yes, but I would also point out to Your Honor that this court is reviewing for plain error on the question of whether it's above guidelines because defendant didn't object. Defendant didn't say after the court said, you know, 60 months on count one, no one jumped in and said, Your Honor, that's an above-guideline sentence. You have procedural obligations under the rules of criminal procedure to make findings. Because the way that everyone I know thinks about above-guideline sentences and the way that both this court and the Supreme Court talk about an above-guideline sentence is that you're looking at the final number, that is the total number of months the defendant is actually going to spend in prison, and comparing that to the final guidelines range that's calculated at the end of the table. But your argument doesn't, plain error, objection or not, right? If they got the guidelines wrong, that's going to be plain error, and if the guidelines are right, then it's not. This isn't a place where, oh, maybe there's error, but it's not plain error. It either is or isn't, right? Correct. I just want to point out that for the procedural argument regarding whether there is such a thing as an above-guideline sentence on a single count, that's a plain error, and I would submit that that's reviewed for plain error, and even if this court had some concerns about whether that's right, although, again, I'd submit that it's pretty clear within case law that it's not, I don't know that any sort of error like that would be clear. So your argument, though, is that under the grouping rules this is a within-guideline sentence? This is a within-guideline sentence. End of story. And if it's not, if we disagree with that, it probably needs to go back. Yeah. Sorry. Yes. If this court were to determine that the final offense level, that 24, was incorrectly calculated, because otherwise this court's been very clear that if you get to that right final offense level, any error is harmless. Because what we care about is that final offense level, and I guess the interaction with the table, so if the judge looked at the wrong line on the table, the wrong guidelines range. But, yes, that is the procedure that we care about, and that was correct in this case. I think we have your argument. Thank you very much. Thank you very much. Mr. Spears. Thank you, Your Honors. First of all, just to be clear, the district court said specifically that for count 37, the sentence, the guidelines were 24 months, and I'll refer the court to Special Appendix 8. This is where the judge issued his written findings. He says the guideline sentence for count 37 is two years of imprisonment, and then he proceeds to impose a sentence of five years on that. If that is the guideline sentence for count 37 in isolation, but then by virtue of the grouping rules, the effective total guideline sentence becomes 51 to 63, is any error in that statement? Does it matter? I think it matters because it's not clear what the significance of that finding is to the court. And it's interesting because the probation office in this case was arguing essentially that since 1028A is a consecutive mandatory two years, the probation office argued that there should be two years added on by virtue of this. So they were taking the position that I think neither of you have taken, which is that the 371 count is subject to the same independent sentence and consecutive sentence as the substantive 1028 count. At least conceptually, that seemed to be the way they were calculating. So it's just not clear how the district court was integrating this finding of five years on count 37 with a sentence. Of course, we have serious issues with the actual use of the intended loss at 1.5 million. And, again, the absence of findings is an issue also, and just on the plain error. You made findings there by adopting the pre-sentence report, which actually had an even higher loss than he ultimately used, right? That's correct because one of the oddities of this sentencing record is that the loss figure that the district court came up with for intended loss was for two years subsequent to the charged conspiracy. And the district court did not include the lower numbers for the two years within the conspiracy, which I can't understand. So that's an issue. But when you have an actual loss that's $45,000, and to be clear, the IRS paid refunds based on this fraud, paid refunds in the amount of $45,000. But to then be sentenced as if it was 1.5 million and to have your sentence doubled as a result of that and not have any findings and then have the anomaly of whatever the effect is as to the findings of five years on count 37, we're left with an impossible record here. And for all of these reasons, we do think of resentencing as an order. The resentencing must occur even for purposes of evaluating the 3553A factors because of the retroactive amendment for zero-point offenders. It seems appropriate to have a more fulsome sentencing where all of these issues can be finally resolved and resolved correctly. Thank you.